**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In Re: Ex Parte Application of BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT for an Order Pursuant to 28 U.S.C. Section § 1782 to Obtain Discovery for Use in Foreign Proceeding | Case No. 2:25-mc-00073-GAW |

**WILLIAM MARINO'S RESPONSE IN OPPOSITION AND OBJECTION TO APPLICANT BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT'S <u>MOTION TO COMPEL DISCOVERY</u>**

9646843.1

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................ 1

II.   BACKGROUND ............................................................................................................... 1

III.  ARGUMENT .................................................................................................................... 4

      A.   Mr. Marino Has Not Waived any Objections or Privileges. ............................................ 4

      B.   This Court Lacks Subject Matter Jurisdiction Over this Proceeding............................... 5

      C.   BMW Is Not an "Interested Person"................................................................................. 9

      D.   BMW's Requests and Subpoenas Place an Undue Burden on Mr. Marino ..................... 9

      E.   BMW Has Forfeited any Right to Fact Discovery. ......................................................... 12

IV.   CONCLUSION ................................................................................................................ 14

i

**TABLE OF AUTHORITIES**

**Cases**

*Akebia Therapeutics, Inc. v. FibroGen, Inc.*
   793 F.3d 1108 (9th Cir. 2015)........................................................................ 5, 7, 8

*Already, LLC v. Nike, Inc.*
   568 U.S. 85 (2013) ................................................................................................ 5

*AVX Corp. v. Presidio Components, Inc.*
   923 F.3d 1357 (Fed. Cir. 2019) ........................................................................... 7

*Chafin v. Chafin*
   568 U.S. 165 (2013) ............................................................................................. 6

*Coast Auto. Grp., Ltd. v. VW Credit, Inc.*
   34 F. App'x 818 (3d Cir. 2002) .......................................................................... 13

*Delgrosso v. Spang & Co.*
   903 F.2d 234 (3d Cir. 1990) .............................................................................. 13

*Food & Drug Admin. v. All. For Hippocratice Med.*
   602 U.S. 367 (2024) ............................................................................................. 6

*Hollingsworth v. Perry*
   570 U.S. 693 (2013) ............................................................................................. 5

*Kaiser v. Bowlen*
   455 F.3d 1197 (10th Cir. 2006)......................................................................... 12

*Khrapunov v. Prosyankin*
   931 F.3d 922 (9th Cir. 2019) ............................................................................... 6

*Lewis v. Cont'l Bank Corp*
   494 U.S. 472 (1990) ............................................................................................. 9

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*
   243 F.3d 773 (3d Cir. 2001) ........................................................................ 12, 13

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*
   81 F.3d 355 (3d Cir. 1996) .......................................................................... 12, 13

*Steel Co. v. Citizens for a Better Env't.*
   523 U.S. 83 (1998) ............................................................................................... 9

ii

**Statutes**

28 U.S.C. § 1782 ................................................................................................. passim

**Rules**

Fed. R. Civ. P. 37(a)(5)(B) ......................................................................................... 14

FED. R. CIV. P. 45(d)(1) .................................................................................................. 9

9646843.1

## I.    INTRODUCTION

Mr. William Marino, by and through his undersigned counsel, hereby submits this Response in Opposition and Objection to Applicant Bayerische Motoren Werke Aktiengesellschaft's Motion to Compel Discovery ("Motion").

BMW's filings in this Court have disclosed a mere portion of the litigation between Onesta and BMW—that Onesta began in a single, proper forum before BMW expanded it to multiple, duplicative fora.   Here, BMW continues its practice of needlessly multiplying litigation.  The legal controversy that gave BMW standing here to originally make its § 1782 application no longer exists, and BMW does not have standing to seek the relief requested in its Motion.  BMW's requested discovery is an undue burden on Mr. Marino. The requests here are also duplicative of discovery BMW is already seeking under a separate § 1782 from Onesta IP, LLC (hereinafter "Onesta"), the actual litigant in past disputes with BMW.  Consequently, Mr. Marino respectfully requests this Court deny BMW's Motion and vacate the order granting BMW's *ex parte* application.  Furthermore, because BMW's Motion is made in bad faith to harass, Mr. Marino respectfully requests that the Court grant an award of attorneys' fees for responding to this Motion.

## II.    BACKGROUND

Last year, in *BSH v. Electrolux* (available at https://eur-lex.europa.eu/legal-content/EN/TXT/HTML/?uri=CELEX:62022CJ0339) the Grand Chamber of the Court of Justice of the European Union ("CJEU"), an exceptional composition of the highest court in the EU, held that non-EU patents were enforceable against defendants in their home EU courts for conduct in the patent-issuing country, irrespective of whether the defendants raise invalidity defenses.  The CJEU decision represents a basic exercise of the European courts' general

1

9646843.1

jurisdiction over its members. *Electrolux* confirmed that courts have the ability to regulate the conduct of their citizens, including by prohibiting those citizens from committing the tort of patent infringement in other countries.

Following *Electrolux*, on October 9, 2025, Onesta initiated infringement proceedings in Germany ("the German proceedings") on a European patent and two U.S. patents against BMW. Then, on December 15, 2025, BMW sought emergency relief to halt the German proceedings—but not in front of the Munich court. Instead, BMW filed a declaratory-judgment action and sought a temporary restraining order and an antisuit injunction in the Western District of Texas. *Bayerische Motoren Werke Aktiengesellschaft v. Onesta IP, LLC*, No. 6:25-cv-00581-ADA (W.D. Tex. filed Dec. 15, 2025). One of the reasons BMW sought an antisuit injunction to halt infringement proceedings in Germany, in favor of the new, duplicative ones in the Western District of Texas, was BMW's contention that "[p]roceedings in the Munich court necessarily deprive BMW of critical defendant rights available only here—e.g., fact discovery…." *BMW AG*, No. 6:25-cv-00581-ADA, Dkt. 7 at 2.

Despite this representation in Texas, weeks later on December 29, 2025, BMW filed the present case seeking fact discovery for the German infringement proceedings and a potential nullity action.[1] BMW has never informed the Western District of Texas of these additional discovery proceedings, and BMW chose not to inform Mr. Marino or their counsel of these proceedings until this Court granted BMW's application to seek discovery. Dkt. 11-5 at 10-11.

---

[1] Dkt. 1. BMW also filed *five* other, largely duplicative, § 1782 applications in addition to the two filed in this Court. Case No. 1:25-cv-01561-JLH (D. Del.); Case No. 1:25-cv-01562-JLH (D. Del.); Case No. 1:25-mc-00026-LMB (E.D. Va.); Case No. 6:26-mc-00001-JSS (M.D. Fla.); Case No. 6:26-mc-00002-RBD (M.D. Fla.)

9646843.1

Back in the Western District of Texas, a hearing on BMW's motion for antisuit injunction was held on January 13, 2026. *BMW AG*, No. 6:25-cv-00581-ADA, Dkt. 22. The Western District of Texas granted the antisuit injunction but permitted Onesta a window of time to appeal to the Federal Circuit. *See BMW AG*, No. 6:25-cv-00581-ADA, Dkt. 26 at 68-69. The same day, Onesta filed a motion for temporary stay of the district court's injunction from the Federal Circuit. *Bayerische Motoren Werke Aktiengesellschaft v. Onesta IP, LLC*, No. 26-1338, ECF No. 2 (Fed. Cir. Jan. 14, 2026)[2]. On January 14, 2026, the Federal Circuit denied Onesta's motion, citing BMW's statement "that the injunction has yet to take effect' and that the District Court has not 'enter[ed] its final judgment on injunctive relief." *Id.*, ECF No. 12 at 2. Thereafter, on January 15, 2026, the Western District of Texas clarified in writing that it had intended the injunction to take effect immediately and provided a window of time for Onesta to appeal. *BMW AG*, No. 6:25-cv-00581-ADA, Dkt. 31. Later the same day, despite the clarification, BMW moved for a finding that Onesta was in contempt for not yet complying with the injunction it had just represented had not taken effect. *Id.*, Dkt. 33. Onesta renewed its motion to stay the injunction and the Federal Circuit ordered a stay of the injunction. BMW AG, No. 26-1338, ECF No. 15 (Fed. Cir. Jan. 16, 2026).

On February 23, 2026, the Western District of Texas entered its written order granting the anti-suit injunction. *BMW AG*, No. 6:25-cv-00581-ADA, Dkt. 50. The Western District of Texas determined that the German proceedings on U.S. patents would "deprive BMW of critical defendant rights available only here—e.g., fact discovery…." *Id.* at 4. To make that determination, the Western District of Texas relied on BMW's representations in its motion

---

[2] The filing appeared on the docket on January 14, 2026 because of the time and manner of filing on January 13, 2026.

9646843.1

regarding its inability to secure fact discovery for the proceedings in Germany. *Id.* (citing BMW's Motion for Temporary Restraining Order and Anti-Suit Injunction).

On March 10, 2026, Onesta formally executed its agreement with Qualcomm which resolved the infringement alleged in the German proceedings. *BMW AG*, No. 6:25-cv-00581-ADA, Dkt. 55. On March 12, 2026, Onesta sought termination of the German proceedings based on settlement between "[Onesta] and the supplier of the processor chips that are installed in the attacked embodiments." Dkt. 11-9. The language of the withdrawal makes it clear the dispute between Onesta and BMW is over, stating for each asserted patent that: "[Onesta] irrevocably waives vis-à-vis [BMW] all conceivable substantive legal claims arising from the patent-in-suit." *Id.*[3] Accordingly, there is no longer a legal controversy between Onesta and BMW. Onesta's appeal to the Federal Circuit is pending dismissal by agreement of the parties. *BMW AG*, No. 26-1338, ECF No. 29 (Fed. Cir. Mar. 3, 2026); *Id.*, ECF No. 33 (Fed. Cir. Mar. 13, 2026).

## III.    ARGUMENT

### A.    Mr. Marino Has Not Waived any Objections or Privileges.

BMW argues that any objections or privileges have been waived by a failure to object or move to quash. Dkt. 11-2 at 1, 5-6. BMW's argument is made in bad faith, repeatedly and unequivocally representing to this Court that "on March 6, Mr. Marino did not serve objections or responses." Dkt. 11-2 at 4; *see also id.* at 3, 5. The letter from Mr. Marino's counsel, which BMW attached as Exhibit A to their Motion, includes multiple objections and responses and is *titled* "Responses and Objections to Subpoenas." BMW cites no authority for the proposition that served objections are deemed waived if a motion to quash is not filed. That is not how Rule 45

---

[3] Withdrawals of the other German proceedings are substantially similar to this one.

9646843.1

operates.  Accordingly, BMW's waiver argument is solely based on BMW's affirmative misrepresentation that "Mr. Marino did not serve objections or responses," and this argument fails.  Dkt. 11-2 at 4.

### B.    This Court Lacks Subject Matter Jurisdiction Over this Proceeding

Conspicuously, BMW never contends that it *actually has* standing to present this Motion because a legal controversy exists between Onesta and BMW, or between Mr. Marino and BMW. It is undisputed that no legal controversy exists.[4]  Instead, BMW takes the unprecedented view that § 1782 is a special statute that it is excepted from the foundational, black-letter independent Constitutional standing requirement to invoke the power of this Article III Court. Dkt. 11-2 at 7. BMW has not identified a single case that supports this alleged exception of applications under § 1782 from the standing requirements of Article III.

Expectedly, BMW's argument is wrong as a matter of law.  Even a case BMW relies on it its Motion recognizes that Constitutional standing is an independent requirement in § 1782 cases. In *Akebia*, the Ninth Circuit said that "[b]ecause Akebia seeks to invoke the power of a federal court, it **also** must demonstrate that it has standing to do so under Article III." *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108,1111 (9th Cir. 2015) (emphasis added)." The Supreme Court has made it clear that "any person invoking the power of a federal court must demonstrate standing to do so." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). Furthermore, that requirements "persist[s] throughout all stages of litigation." *Id.* at 705 (citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013)).

---

[4] "[Onesta] irrevocably waives vis-à-vis [BMW] all conceivable substantive legal claims arising from the patent-in-suit." Dkt. 11-9.

These subpoenas are moot regarding BMW's nullity action (as well as the infringement actions). *Khrapunov v. Prosyankin*, 931 F.3d 922, 928 (9th Cir. 2019) ("'There is thus no case or controversy, and a suit becomes moot, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."'" (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).  There is no legal dispute remaining between Onesta and BMW in view of BMW's now-licensed infringement and the terms by which Onesta withdrew the German infringement proceedings, and BMW no longer has an injury-in-fact that could be redressed by its application.  Thus, BMW lacks Article III standing to seek relief under 28 U.S.C. § 1782 from a U.S. district court.  *Food & Drug Admin. v. All. For Hippocratice Med.*, 602 U.S. 367, 380 (2024); see also *Khrapunov*, 931 F.3d at 930 (analyzing whether the applicant has had their personal stake in the dispute eliminated "such that he no longer has standing to pursue his § 1782 application").  It makes no difference to BMW—whose conduct is licensed under it—whether EP290 is invalidated in the nullity action or not. There is no legal injury BMW can identify that would be redressed by the discovery BMW seeks.

A German nullity action does not require Article III standing, much like an *inter partes* review ("IPR") in the United States Patent and Trademark Office.  Accordingly, BMW is wrong to argue that merely being a "litigant" in a proceeding that does not require a party to have a personal interest in the outcome can, by itself, generate a personal interest sufficient to pursue a § 1782 application. Dkt. 11-2 at 8.  This concept is already recognized procedurally at the USPTO. In the United States, a party has the statutory right to pursue an IPR proceeding without a personal interest in the outcome (i.e., one can attempt to invalidate any patent in an IPR regardless of whether one might be subject to an infringement claim).  However, if that same party lacking personal interest loses the IPR, it does not have standing to pursue an appeal of its

6

loss because there is not a sufficient controversy to maintain Article III standing—regardless of the petitioner's subjective desire to invalidate a patent. *See, e.g., AVX Corp. v. Presidio Components, Inc.*, 923 F.3d 1357 (Fed. Cir. 2019).

The same holds true for a nullity action in Germany—that BMW may be able to pursue its nullity action in the absence of legal injury or personal interest does not confer Article III standing to seek relief under 28 U.S.C. § 1782. BMW does not identify any authority where an application under § 1782 was granted for discovery to use in a foreign invalidity proceeding in the absence of any infringement dispute. The closest BMW comes is to argue that "foreign patent office proceedings alone are sufficient to support § 1782 discovery." Dkt. 11-2 at 8 (*characterizing Akebia*, 793 F.3d at 1110-11). But there was a *reason* Akebia was pursuing foreign patent office proceedings beyond the mere spite motivating BMW. The nature of Akebia's products were such that they were covered by the patents it sought to invalidate, which would resolve an infringement dispute, just like an ordinary patent declaratory judgment action in the United States (which also requires standing). *Akebia*, 793 F.3d at 1110. ("Akebia is a party to the foreign proceedings underlying this case; indeed, it is the entity that seeks to invalidate FibroGen's European and Japanese patents *because of their potential effect on the nature of the products that Akebia develops*." (emphasis added)). BMW argues that *Akebia* stands for the proposition that mere refusal to comply with a subpoena issued under § 1782 can create an injury in fact *ex nihilo*. Dkt. 11-2 at 8. This is a misreading of *Akebia*. *Akebia* makes clear that Akebia was injured by the failure to disclose under § 1782 because "Akebia has *an interest* in receiving the information it seeks." *Akebia*, 793 F.3d at 1111 (emphasis added). Akebia had an interest in receiving the discovery so that it could invalidate the patents *so that it would not be held liable for infringement*. That is, Akebia had standing to pursue its § 1782 application because of the

7

9646843.1

legal controversy of patent infringement.  BMW does not identify any case where an application under § 1782 was granted where there was no underlying legal controversy.

Even if *Akebia* was, incorrectly, read to hold that a refusal to comply with a § 1782 application can independently generate standing in the absence of an underlying legal controversy, it would not be controlling in this case.  Here, the Court lacked subject matter jurisdiction to issue its Order because the underlying legal controversy between Onesta and BWM was already resolved *before* the Court issued its Order.  On February 4, 2026, Onesta and Qualcomm moved to suspend their ITC proceedings because the parties "have reached an agreement on a binding term sheet" and this fact was relevant to BMW because Qualcomm "makes the chips underlying Onesta's infringement allegations against BMW in Germany." *BMW AG*, No. 6:25-cv-00581-ADA, Dkt. 48.  From this point forward, there was no legal controversy remaining between Onesta and BMW.  *BMW AG*, No. 6:25-cv-00581-ADA, Dkt. 51. BMW had no problem immediately notifying the Western District of Texas of these developments on February 6, 2026.  *BMW AG*, No. 6:25-cv-00581-ADA, Dkt. 48.  Despite its willingness to alert the Texas court, BMW elected to not similarly inform this Court of the "recent developments."  *BMW AG*, No. 6:25-cv-00581-ADA, Dkt. 48.  This Court's Order did not issue until February 10, 2026, when subject matter jurisdiction was lacking.  Dkt. 6. Accordingly, BMW cannot suffer an injury-in-fact from Mr. Marino's noncompliance with an Order that was issued without subject matter jurisdiction.

BMW's second basis for maintaining this case is the value in dispute used to determine attorneys' fees in the withdrawn German proceedings. This alleged interest cannot create standing as a matter of black-letter law because "an interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the

9646843.1

underlying claim." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990). "Where on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary judicial pronouncements … obtained, solely in order to obtain reimbursement of sunk costs." *Id.* Such caution is warranted here because the dispute between Onesta and BMW is over.

### C.     BMW Is Not an "Interested Person"

Furthermore, BMW cannot seek enforcement of its subpoena issued under 28 U.S.C. §1782 because it is no longer an "interested person" as required by the statute. BMW no longer has a legal interest in the proceedings in Germany because there is no legal controversy.  BMW cannot have any "interest" in any sense of the word: It makes no difference to BMW—whose conduct is licensed under it—whether EP290 is invalidated in the nullity action or not. Similarly, BMW's alleged "interest" in obtaining information related to value-in-dispute "to calculate recoverable attorneys' fees"[5] has no relation to "the merits underlying the claim" and is insufficient to render BMW an "interested person."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).  Accordingly, BMW cannot be, any longer, an "interested person" under 28 U.S.C. § 1782.  That BMW does not qualify as an applicant under 28 U.S.C. § 1782 is an independent basis for which BMW's Motion should be denied.

### D.     BMW's Requests and Subpoenas Place an Undue Burden on Mr. Marino

Even if the Court finds that BMW has standing to pursue its requested relief, and is an interested person, BMW's motion should still be denied because the subpoena places an undue burden and expense on Mr. Marino.  FED. R. CIV. P. 45(d)(1).

---

[5] Dkt. 11-2 at 6.

9

First, the expense and burden of these subpoenas is more properly directed to the *party* BMW is actually engaged in litigation with, Onesta.  BMW recognizes this fact, because *before the present application was filed* BMW filed a substantially identical application seeking discovery from Onesta under § 1782 in the District of Delaware. *In re Application of Bayerische Motoren Werke Aktiengesellschaft*, No. 1:25-cv-01561-JLH-LDH, Dkt. 1 (D. Del. filed Dec. 24, 2025). The documents requested from Onesta are substantially similar to those sought from Mr. Marino, which indicates seeking this discovery from Mr. Marino is merely designed to harass and increase costs.  Further, the types of documents BMW seeks are more appropriately directed to Onesta as the litigant in the proceedings. Thus, these requests are an undue burden on Mr. Marino because they are duplicative and more appropriately sought from Onesta.

Second, BMW's Motion admittedly seeks overbroad relief *on its own terms*.  In making its application to this Court, BMW described what information it seeks, as well as what issues in the German proceedings that information went to.  Dkt. 1-2 at 5-6.  The Requests for Production ("RFPs") in the issued subpoena track the same bullet points in the application in roughly the same order.  Dkt. 1-3 at 2-6.  BMW recognizes that the German infringement proceedings are withdrawn, but in its Motion still contends it needs discovery on issues related to the nullity proceeding (i.e., invalidity) and value-in-dispute.  Dkt. 11-2 at 2.  Nonetheless, BMW now affirmatively moves to compel responses to requests that—even under BMW's own contentions—have nothing to do with invalidity or value-in-dispute.  For example, BMW stated in its application that it needed information related to the decision to assert U.S. patents in Germany because it was "relevant to potential market implications of any injunction and to BMW AG's patent misuse defense."  Dkt. 1-2 at 5-6 at c), d).  Neither of these issues related to invalidity or value-in-dispute according to BMW, nonetheless, BMW still moves to compel RFPs

10

6 and 7 about these issues.  Dkt. 1-3 at 3.  Thus, even under BMW's own contentions, its Motion is admittedly unduly burdensome.

Regardless of BMW's admissions of undue burden, even a casual review of the RFPs reveal that they are much broader than merely invalidity or value-in-dispute.  For example, RFP 9, "Documents sufficient to show the full scope of Your relationship with Onesta," has nothing to do with whether EP290 is invalid or the value of any asserted patent.  RFPs 3, 6, 7, 8, 9, 10, 12, 14, and 15 have no possible bearing on the invalidity of EP290.

Further reasons suggest that BMW's purpose here is merely to harass Mr. Marino, rather than a good faith search for documents and testimony.  For example, BMW voluntarily withdrew of its § 1782 application seeking discovery from Randall Rader. *In re Application of Bayerische Motoren Werke Aktiengesellschaft*, No. 1:25-mc-00026-LMB-IDD, Dkt. 12 (E.D. Va. Mar. 20, 2026). Mr. Rader was a damages expert declarant for Onesta in the German proceedings. While BMW claims they need discovery for value-in-dispute, they chose to voluntarily dismiss its § 1782 application seeking documents relied on or consulted by Onesta's damages expert when forming his opinion.

Depositions are equally an undue burden.  There is no dispute between Onesta and BMW any longer: "[Onesta] irrevocably waives vis-à-vis [BMW] all conceivable substantive legal claims arising from the patent-in-suit." Dkt. 11-9.  This should be over, and requiring a deposition is unduly burdensome.  Whether EP290 is invalid is an issue that should be decided merely on the documentary record.  Mr. Marino is not an inventor, so, like in an IPR, there should be no deposition of him. Everything BMW wants would be in the possession custody and control of Onesta—which is why BMW *first* filed an application seeking discovery from Onesta.

11

*In re Application of Bayerische Motoren Werke Aktiengesellschaft*, No. 1:25-cv-01561-JLH-LDH, Dkt. 1 (D. Del. filed Dec. 24, 2025).

It is also an undue burden and expense on Mr. Marino to be forced to personally retain local counsel in Pennsylvania and respond to BMW's attempt to enforce a subpoena that was issued without subject matter jurisdiction underlying the Order and for which BMW does not have standing to pursue.  BMW should have withdrawn these two subpoenas, just as they did with Mr. Rader. Again, these proceedings and the present Motion are merely designed to harass Mr. Marino.

**E.      BMW Has Forfeited any Right to Fact Discovery.**

BMW argued in Texas that any infringement action on U.S. patents should have been brought in the United States because of the "critical defendant rights available only here—e.g., fact discovery…." *BMW AG*, No. 6:25-cv-00581-ADA, Dkt. 7 at 2. The Western District of Texas relied on this statement from BMW in its order granting the anti-suit injunction. *Supra* at II. Thus, BMW has forfeited its right to fact discovery under § 1782.

Judicial estoppel[6] "seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996). A court may impose judicial estoppel if: " (1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her

---

[6] While Mr. Marino did not specifically use the words "judicial estoppel" in his formal objections and responses, this argument is not waived because counsel for Mr. Marino raised the subject matter of the objection—the inconsistent positions—even earlier with counsel for BMW.  Dkt. 11-5 at 10-11.  Regardless, the purpose of judicial estoppel is "to protect the courts rather than the litigants." *Montrose Medical Grp. Participating Savings Plan v. Bulger*, 243 F.3d 773, 781 (3d Cir. 2001).  Thus, it is a doctrine that a court may consider *sua sponte*.  *Kaiser v. Bowlen*, 455 F.3d 1197, 1203-04 (10th Cir. 2006) (collecting cases).

12

position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity." *Coast Auto. Grp., Ltd. v. VW Credit, Inc.*, 34 F. App'x 818, 823 (3d Cir. 2002) (citing *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777-778 (3d Cir. 2001)). "[A]pplication of the doctrine of judicial estoppel is particularly appropriate in situations ... where the party benefitted from its original position." *Ryan Operations*, 81 F.3d at 361 (citing *Delgrosso v. Spang & Co.*, 903 F.2d 234, 242 (3d Cir. 1990)).

BMW took two inconsistent positions. First, before the Western District of Texas, BMW argued that the German proceedings must be stopped, and the infringement proceedings should instead occur in U.S. district court, because "[p]roceedings in the Munich court necessarily deprive BMW of critical defendant rights available only here—e.g., fact discovery…" *BMW AG*, No. 6:25-cv-00581-ADA, Dkt. 7 at 2.  Second, before this Court, BMW argued that it is entitled to fact discovery *to use in* the German proceedings. BMW did not inform either this Court or the Western District of Texas of the inconsistent positions it had taken in the other court regarding the availability of fact discovery.  Without a corrective measure from this Court, BMW will have shown that parties can maintain inconsistent positions by keeping one court in the dark on positions taken in another court. This threatens the integrity of this Court's ability to make determinations based on *all* of the facts. This is particularly important where applications, like this one, are filed and granted *ex parte*.

In sum, by the *ex parte* nature of § 1782, this Court had to rely on BMW's representations to grant the application seeking discovery. Missing from those representations was BMW's argument that fact discovery would not be available to them for the German proceedings. BMW's application was not served on Mr. Marino until after BMW had induced the

13

Western District of Texas to rely on that initial position when it granted the anti-suit injunction. Consequently, BMW should be judicially estopped from seeking discovery here.

## IV.    CONCLUSION

BMW's litigation campaign has gone on long enough. BMW now moves to compel discovery from two individuals associated with a company that BMW no longer has a dispute with. Hoping to avoid litigation costs, Mr. Marino did not move to quash. Mr. Marino had hoped BMW would voluntarily withdraw their application, like they did for Mr. Rader. This application for discovery is duplicative one of BMW filed earlier against Onesta. With this proceeding, BMW shows its continued willingness to multiply litigation and take inconsistent positions across courts in different fora hoping to gain temporary strategic advantage. *See supra* at § II (explaining BMW's inconsistent representations before the Federal Circuit and the Western District of Texas); *See supra* at § III.A, E (explaining BMW's inconsistent representations before this Court and the Western District of Texas); *see BMW AG*, No. 6:25-cv-00581-ADA, Dkt. 54 at 9-10 (further cataloguing BMW's exceptional litigation conduct across multiple fora).  BMW's Motion—which it does not even contend it has standing to make—was made in bad faith to harass Mr. Marino. Accordingly, Mr. Marino respectfully requests an award of attorneys' fees for the fees incurred responding to the Motion.  Fed. R. Civ. P. 37(a)(5)(B).

Mr. Marino respectfully requests this Court deny BMW's motion to compel, vacate the order granting BMW's *ex parte* application, and grant attorneys' fees to Mr. Marino.

14

9646843.1

DATED: March 27, 2026                    Respectfully submitted,

*/s/ Ryan W. O'Donnell*
Ryan W. O'Donnell (PA 89,775)
Email: RODonnell@vklaw.com
**Volpe Koenig**
30 S. 17th Street, 18th Floor
Philadelphia, PA 19103
Telephone: (215) 568-6400
Facsimile: (215) 568-6499


Jason D. Cassady (*pro hac vice* pending)
Texas Bar No. 24045625
Email: jcassady@caldwellcc.com
Daniel R. Pearson (*pro hac vice* pending)
Texas Bar No. 24070398
Email: dpearson@caldwellcc.com
Eric Horsley (*pro hac vice* pending)
Texas Bar No. 24131396
Email: ehorsley@caldwellcc.com
**CALDWELL CASSADY & CURRY P.C.**
2121 N Pearl Street, Suite 1200
Dallas, Texas 75201
Telephone:   (214) 888-4848
Facsimile:    (214) 888-4849

 ***ATTORNEYS FOR RESPONDENT,
MR. WILLIAM MARINO***

9646843.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 27, 2026, a true and correct copy of the foregoing document was filed electronically with the Clerk of Court and served using the Court's CM/ECF system.

*/s/ Ryan W. O'Donnell*
Ryan W. O'Donnell

9646843.1